IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

RYAN W. WEIMER                                                           PLAINTIFF

V.                                      NO. 12-2280

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration              DEFENDANT

**O R D E R**

Before the Court is Plaintiff's Motion for an Award of Attorney Fees under the Equal Access to Justice Act (hereinafter "EAJA"). (Doc. 17). Plaintiff, Ryan W. Weimer, appealed the Commissioner's denial of benefits to the Court.  On January 8, 2014, the undersigned entered a Memorandum Opinion and Order Remanding the case to the Commissioner, pursuant to Sentence Six of 42 U.S.C. §405(g), for consideration of additional evidence. (Docs. 13-14). On remand, the ALJ considered the additional evidence, conducted a new hearing, and issued a fully favorable decision, finding Plaintiff disabled. Plaintiff thereafter moved for the entry of a final judgment by this Court so that Plaintiff could seek an award of attorney's fees. On November 2, 2015, a Judgment was entered, affirming the Commissioner's favorable decision. (Doc. 16).

Plaintiff now moves for an award of $4,320.20 in attorney's fees and expenses under EAJA, pursuant to 28 U.S.C. §2412, requesting compensation for 23.20 attorney hours of work performed before the Court in 2012, 2013, 2014, and 2015, at an hourly rate of $183.10 for hours spent in 2012, $185.95 for hours spent in 2013-2015, and $17.85 in expenses.

Defendant filed a response to Plaintiff's request, stating that Plaintiff is not entitled to EAJA fees because the position of the Defendant was substantially justified. (Doc. 19).

The Court will first address the question of whether the Defendant's position was substantially justified in the underlying proceeding.

"It is the government's burden to prove that its position was substantially justified." Conklin v. Astrue, 282 Fed. Appx. 488, 489 (8th Cir. 2008). The Eighth Circuit in Conklin continued:

> It can accomplish this by showing that the position was "justified in substance or in the main – that is, justified to a degree that could satisfy a reasonable person." (citation omitted). To warrant such a characterization, the position must have "reasonable basis both in law and fact." (citations omitted).

Id.

The Defendant argues that the ALJ and Appeals Council cannot be faulted for not considering evidence that was not before them when they issued the unfavorable decision and denial of Plaintiff's request for review. (Doc. 19).

A brief history of this case is necessary. As noted in the Memorandum Opinion entered by the undersigned on January 8, 2014 (Doc. 13), Plaintiff filed his applications for Child's Insurance Benefits (CIB) and Supplemental Security Income (SSI) benefits on January 25, 2011, and February 2, 2011, respectively. At the administrative hearing held before the ALJ on April 3, 2012, Plaintiff chose not to be represented by counsel. On June 27, 2012, the ALJ issued unfavorable decisions, and found Plaintiff could perform work as a kitchen helper/dishwasher, hand packager, and bagger/sacker. Plaintiff obtained counsel subsequent to the entry of the ALJ decisions.

Plaintiff filed this action (Doc. 1), and on February 27, 2013, filed a Motion for Remand and Brief with New Evidence in Support of Complaint for Judicial Review. (Doc. 11). Attached to the motion was the September 7, 2012 report of Dr. Robert Spray. In the Memorandum Opinion dated January 8, 2014, the undersigned concluded that the fact that Dr. Spray's report did not exist on the date of the ALJ's decision, coupled with the fact that Plaintiff was unrepresented by counsel until after the ALJ's decision, "serves as cause sufficient to excuse Plaintiff's failure to include these records in the administrative proceedings." Goad v. Shalala, 7 F.3d 1397, 1398 (8ᵗʰ Cir. 1993)." (Doc. 13 at p. 3). The Court next considered the issue of materiality, noting that the evidence of record revealed that Plaintiff had a long history of treatment for seizure disorder, incidents of suicidal/homicidal ideation, and borderline intellectual dysfunction/mild mental retardation, and that Dr. Spray had been treating Plaintiff since June of 2007. In Dr. Spray's September 7, 2012 report, Dr. Spray found Plaintiff had marked limitations in eleven categories, and the Court concluded that remand was appropriate pursuant to sentence six of 42 U.S.C. §405(g), for consideration of the additional medical evidence, "as there is a reasonable likelihood that it would have changed the Commissioner's determination." (Doc. 13 at p. 4).  At that time, the Court did not find it necessary to address any other substantive issue addressed by the ALJ in his decision.

The Court must now determine whether the Defendant was substantially justified in initially denying Plaintiff's applications for CIB and SSI.  "The substantial justification standard is not the legal equivalent of the substantial evidence test, which is applicable in a judicial review of the commissioner's final decision." Strom v. Astrue, Civ. No. 07-150 ((DWF/RLE), 2008 WL 2098107 at *2 (D. Minn. Apr. 28, 2008).

A "substantially justified" position is one that is "clearly reasonable, well-founded in law and fact, and solid, though not necessarily correct." *Lauer v. Barnhart*, 321 F.3d 762, 764 (8th Cir. 2003), quoting *Friends of Boundary Waters Wilderness v. Thomas*, supra at 885; see also, *Herman v. Schwent*, supra at 1065 ("The Government proves its position was substantially justified by showing the position was '"justified in substance or in the main" – that is, justified to a degree that could satisfy a reasonable person.'"); *SEC v. Zahareas*, 374 F.3d 624, 626 (8th Cir. 2004)(same).

In contrast, substantial evidence is a more quantitative measure. It is evidence, in the Record as a whole, which a reasonable mind would accept as adequate to support a conclusion. See, *Ostronski v. Chater*, 94 F.3d 413, 416 (8th Cir. 1996). These differing evidentiary standards make it possible for the Commissioner to lose on the merits of the disability issue, and yet win on the application for an EAJA award. See, *Welter v. Sullivan*, 941 F.2d 674, 676 (8th Cir. 1991).

Id.

Accordingly, the Court has applied the appropriate standard in determining whether the Defendant was substantially justified in taking its original position, and, after reviewing all of the relevant records, the Court concludes that Defendant's position was not substantially justified.

In his decision, the ALJ discussed the June 23, 2011 report of Dr. Spray in a limited fashion. (Tr. 36). The ALJ failed to note that Dr. Spray reported Plaintiff's attention and concentration were below average, and that in a job setting, Plaintiff "may have difficulty persisting with tasks that he finds more challenging, those requiring better academic skills than he has, or in situations where there are interpersonal conflicts." (Tr. 505). The ALJ also discussed the assessment given by non-examining consultant, Dr. Kay M. Gale, who found Plaintiff able to perform unskilled work, and the ALJ gave her opinion significant weight. (Tr. 36). The ALJ also addressed the Vista Health Discharge Summary of Dr. Fayz Hudefi, M.D., dated October 7, 2011, who noted that on the day of discharge, Plaintiff said he was hearing voices and was seeing things when he went to the bathroom, and that his mother

4

called and said he was not stable enough to be discharged. (Tr. 36, 576-577). Dr. Hudefi gave Plaintiff a guarded prognosis, related to marijuana abuse. (Tr. 578). Thereafter, on October 20, 2011, Plaintiff was admitted to Vista Health, due to psychosis. (Tr. 596). In a progress note dated October 25, 2011, by Vista Health, it was reported that Plaintiff did not feel safe to be discharged the next day, that he was suicidal and was hearing voices. (Tr. 608). On October 27, 2011, Plaintiff was discharged from Vista Health. (Tr. 593).

Of critical importance is the Mental Diagnostic Evaluation performed by Kathleen M. Kralik, Ph.D., on January 10, 2012, at the request of the Disability Determination Division. (Tr. 618-627). Dr. Kralik believed Plaintiff seemed to be in need of "intensive case management services for assistance in transitioning to some type of semi-independent living arrangement in order to try to reduce the stress and conflict his mothers' management of him apparently causes them both." (Tr. 621). Dr. Kralik believed Plaintiff remained "functionally illiterate." (Tr. 621). She found that it was evident Plaintiff's judgment was poor, he acknowledged inclinations to make threats when more emotionally stressed and distraught, and was estimated to function in the borderline to low average range of intelligence. (Tr. 622, 623). Dr. Kralik noted inconsistent or inadequate treatment compliance and follow-through (especially for seizure regulation and resumption of the psychostimulant treatment he acknowledges was effective), in association with his poor judgment. (Tr. 624). She continued:

> He is clearly not work ready as yet; his prognosis for being so over the next 3 years guarded – especially if he cannot access some independent case management, residential placement and occupational training services of a nature such as to better stabilize his life-and ensure better medication optimization, compliance, and abstention from all forms of substance abuse.

(Tr. 624). Dr. Kralik gave Plaintiff a GAF score of 35-45 and found that Plaintiff was: moderately to significantly impaired in his capacity to carry out activities of daily living and daily adaptive functioning for occupational purposes; mildly to moderately impaired in his capacity to communicate and interact in a socially adequate manner for occupational purposes; was moderately impaired in his capacity to communicate in an intelligible and effective manner for occupational purposes; was moderately to significantly impaired in his capacity to cope with the typical mental/cognitive demands of basic work-like tasks for occupational purposes; was moderately to significantly impaired in his ability to attend and sustain concentration on basic tasks; was moderately to significantly impaired in his capacity to sustain persistence in completing tasks for occupational purposes; was significantly impaired in his capacity to complete work-like tasks within an acceptable time frame for occupational purposes; and was not able to manage funds without assistance. (Tr. 626). Dr. Kralik concluded:

> Even in the absence of the substance abuse issues and even if better complying with optimized psychotropic management, his cognitive issues and learning problems alone seem to be of a nature and severity level – especially in conjunction with his young age, relative immaturity, and lack of specialized occupational training – such as to make it highly unlikely in the next 2-3 years that he would attain such occupational and functional independence.

(Tr. 626-627).

In addressing Dr. Kralik's opinion, the ALJ briefly summarized some of Dr. Kralik's findings, and acknowledged that she said it was unlikely that Plaintiff could achieve independence within the near future. (Tr, 37). He also indicated that he gave the opinions of Plaintiff's examining and treating physicians substantial weight, which appears to be inconsistent with his ultimate findings. (Tr. 37). Subsequent to Dr. Kralik's evaluation, on January 17, 2012, Plaintiff was admitted to The BridgeWay Hospital, due to aggressive

6

behaviors. (Tr. 631). It was reported that Plaintiff had been hospitalized at Vista Health "approximately eight times for aggression." (Tr. 631). Dr. Robert Jarvis, M.D., gave Plaintiff a GAF score of 22. (Tr. 634). Plaintiff was discharged on January 25, 2012. (Tr. 636). Dr. David Street, M.D., reported that Plaintiff did have a conflict with a male and female peer on the unit, when he allegedly made threats to slit their throats, that Plaintiff was becoming increasingly agitated, voiced the threats and punched a wall, banged his head into the wall and was loudly cursing. (Tr. 637). Plaintiff was discharged to Our House and given a full aftercare plan and crisis safety plan that he completed with his therapist. (Tr. 637-638). Plaintiff was given a GAF score of 40 upon discharge. (Tr. 638).

The ALJ addressed Dr. Street's opinion by stating that he diagnosed Plaintiff with mood disorder not otherwise specified, and attention deficit hyperactivity disorder by history, and noted that Dr. Street suggested that schizoaffective disorder should be ruled out by further testing. (Tr. 36). The Court also notes that in 2011, when Plaintiff was admitted to Vista Health on two occasions, his GAF scores upon admission were 15 and 17, respectively. (Tr. 576, 592)

Based upon the entire record as a whole, the Court cannot say that the Defendant's position in this matter was clearly reasonable, well-founded in law and fact, and solid. Even without the new evidence that was the subject of the remand motion, with Plaintiff's lengthy history of mental impairments, the prognoses that were given by two different examining mental health experts, and the ALJ's inconsistent statements regarding the weight he gave to the various opinions of the physicians and conclusions drawn therefrom, the Court does not believe the Defendant was justified to a degree that could satisfy a reasonable person.

Accordingly, the Court finds that the Defendant's position in this matter was not substantially justified, and that Plaintiff is entitled to an award of attorney's fees.

In determining a reasonable attorney's fee, the Court will in each case consider the following factors:  time and labor required;  the novelty and difficulty of questions involved; the skill required to handle the problems presented;  the preclusion of employment by the attorney due to acceptance of the case;  the customary fee;  whether the fee is fixed or contingent;  time limitations imposed by the client or the circumstances;  the amount involved and the results obtained;  the attorney's experience, reputation and ability;  the "undesirability" of the case; the nature and length of the professional relationship with the client;  and awards in similar cases.  Hensley v. Eckerhart, 461 U.S. 424, 430 (1983).

However, the EAJA is not designed to reimburse without limit.  Pierce v. Underwood, 487 U.S. 552, 573 (1988).  The Court can determine the reasonableness and accuracy of a fee request, even in the absence of an objection by the Commissioner. Clements v. Astrue, 2009 WL 4508480 (W.D. Ark. Dec. 1, 2009); see also Decker v. Sullivan, 976 F.2d 456, 459 (8th Cir. 1992) ("Although the issue was not raised on appeal, fairness to the parties requires an accurately calculated attorney's fee award.").

The EAJA further requires an attorney seeking fees to submit "an itemized statement...stating the actual time expended and the rate at which fees and other expenses were computed."  28 U.S.C. § 2412(d)(1)(B).  Attorneys seeking fees under federal fee-shifting statutes such as the EAJA are required to present fee applications with "contemporaneous time records of hours worked and rates claimed, plus a detailed description of the subject matter of the work."  Id.  Where documentation is inadequate, the Court may reduce the award accordingly.  Hensley, 461 U.S. at 433 (1983).

Plaintiff's attorney requests an award under the EAJA at an hourly rate of $183.10 for 4.1 attorney hours spent in 2012, and $185.95 for 19.1 attorney hours spent in 2013-2015, which he asserts were devoted to the representation of Plaintiff in this Court.  The party seeking attorney fees bears the burden of proving that the claimed fees are reasonable. Hensley, 461 U.S. at 437.  Attorney fees may not be awarded in excess of $125.00 per hour - the maximum statutory rate under §2412(d)(2)(A) - unless the court finds that an increase in the cost of living or a special factor such as the limited availability of qualified attorneys justifies a higher fee.  28 U.S.C. § 2412(d)(2)(A).  In Johnson v. Sullivan, 919 F.2d 503 (8th Cir. 1990), the Court stated that the hourly rate may be increased when there is "uncontested proof of an increase in the cost of living sufficient to justify hourly attorney's fees of more than [the maximum statutory hourly rate]," such as a copy of the Consumer Price Index (CPI).   The CPI-South Urban Index, Amended General Order No. 39 supports an award based upon an hourly rate as follows:

2012 – 219.469 x 125 divided by 152.4 (March 1996 CPI-South) = $180.01 hour=$180.00

2013 – 223.109 x 125 divided by 152.4 (March 1996 CPI-South) = $182.99 hour=$183.00

2014 – 227.082 x 125 divided by 152.4 (March 1996 CPI-South) = $186.25 hour=$186.00

2015 – 228.451 x 125 divided by 152.4 (March 1996 CPI-South) = $187.38 hour=$187.00

See Johnson, 919 F.2d at 505. Accordingly, the Court will allow Plaintiff's counsel to recover the hourly rate of $180.00 for 2012, $183.00 for 2013, and $186.00 for 2014 and 2015.

**Paralegal Work:**

Plaintiff's attorney seeks to recover the attorney-fee rate of $180.00 an hour for the following tasks:

9

11/9/12        Complaint and application in forma pauperis filed, summons issued from clerk                                            30 min.

11/12/12       Letter by certified mail with copy of complaint, summons, etc. to appropriate parties                                    18 min.

12/11/12       Received certified receipts and prepared Affidavit of Mailing                                                             18 min

Clerical or secretarial tasks are not compensable under the EAJA.  See Granville House, Inc. v. Department of HEW, 813 F.2d 881, 884 (8th Cir. 1987) (work which could have been completed by support staff is not compensable under the EAJA).  "[P]urely clerical or secretarial tasks should not be billed at [even] a paralegal rate regardless of who performs them."  Missouri v. Jenkins, 491 U.S. 274, 288 n. 10, 109 S.Ct. 2463, 2471 n. 10 (1989).   There is a plethora of district court cases reaching different conclusions as to whether tasks such as those detailed above are compensable or are considered purely clerical. See e.g.,  Peters v. Colvin, No. 15-CV-5198-JRC, 2016 WL 948958 at *5 (W.D. Wash. Mar. 14, 2016); Zabawa v. Colvin, 3:14-CV-3068-MEF, 2016 WL 164625 at *1 (W.D. Ark. Jan. 13, 2016); Sheridan v. Colvin, No. JKB-15-10, 2015 WL 5897735 at *2 (D. Md. Oct. 5, 2015); Talmo v. Colvin, No. ELH-14-2214, 2015 WL 5897707 at *2 (D. Md. Oct. 5, 2015); Treadway v. Comm'r. of Social Security, No. 1-13-cv-01248-SAB, 2014 WL 6901869 at *5-6 (E.D. Cal. Dec. 5, 2014); Echtinaw v. Astrue, No. C09-0024-RSL, 2009 WL 6040072 at *4 (W.D. Wash. Dec. 9, 2009); Knudsen v. Barnhart, 360 F.Supp.2d 963, 977 (N.D. Iowa 2004).

However, a review of the various decisions of the Circuit Courts of Appeals indicates that all that have addressed the issue, except the First Circuit, hold that tasks such as the

filing of documents and preparing and serving summons are considered clerical and not compensable.  See Neil v. Comm'r. of Social Security, 495 Fed. Appx. 845, 847 (9th Cir. 2012); Role Models America, Inc. v. Brownlee, 353 F.3d 962, 973(D.C. Cir. 2004); Coleman v. Houston Independent School District, No. 98-20692, 1999 WL 1131554 at *9 (5th Cir. Nov. 8, 1999).  The Eighth Circuit does not appear to have addressed the issue.  The First Circuit, in  Lipsett v. Blanco, 975 F.2d 934, 940 (1st Cir. 1992), held that tasks such as the filing of documents "ought not to be billed at lawyers' rates, even if a lawyer performs them."  The Court held that the hours should not be completely eliminated, however, as the tasks "fell into the gray area between purely clerical tasks and those properly entrusted to a paralegal."  Id.  The Court concluded that, while the hours should not be compensated at the extravagant attorney-fee rate, which was incommensurate to the nature of the tasks, the hours could be compensated at the prevailing paralegal rate.

The undersigned finds the First Circuit's approach persuasive and a reasonable compromise when it is not clear whether tasks such as those at issue in this case should be classified as purely clerical.   Accordingly, Plaintiff's attorney will be compensated for these hours at the prevailing hourly paralegal market rate, which, based on the paralegal rates submitted by other attorneys in this area, is $75.00.

Based upon the foregoing, the Court finds that Plaintiff's counsel should be awarded an attorney's fee under the EAJA as follows:

2012 – 3 attorney hours at an hourly rate of $180.00 and  1.1 paralegal hours at an hourly rate of $75.00 ;  2013 – 15.5 hours at hourly rate of $183.00; 2014 - .30 hours at hourly rate of $186.00;   2015 – 3.3 hours at hourly rate of $186.00; plus $17.85 in expenses, **for a total**

**attorney's fee award of $4,146.45**.   This amount should be paid in addition to, and not out of, any past due benefits which Plaintiff may be awarded in the future.   Based upon the holding in <u>Astrue v. Ratliff</u>, 130 S.Ct. 2521 (2010), the EAJA award should be paid directly to Plaintiff.

The parties are reminded that the award herein under the EAJA will be taken into account at such time as a reasonable fee is determined pursuant to 42 U.S.C. § 406, in order to prevent double recovery by counsel for the Plaintiff.

DATED this 12th day of May, 2016.



/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

12